UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| PAULINE MERL, SCOTT MERL, and RICHARD J. OVERTON, on behalf of themselves and those similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>WARNER BROS. ENTERTAINMENT INC., NEW LINE CINEMA, LLC, SONY PICTURES DIGITAL ENTERTAINMENT INC., UNIVERSAL CITY STUDIOS LLC, UNIVERSAL STUDIOS HOME ENTERTAINMENT LLC, BRANDSMART USA OF FLORIDA, INC., BEST BUY CO., INC., and TARGET CORPORATION,<br><br>        Defendants. | Complaint – Class Action<br><br>CA. No. |

## COMPLAINT – CLASS ACTION

Plaintiffs Pauline Merl, Scott Merl and Richard J. Overton bring this action on behalf of themselves and all others similarly situated against Defendants Warner Bros. Entertainment Inc., New Line Cinema, LLC, Universal City Studios, LLC, Universal Studios Home Entertainment LLC, Sony Pictures Digital Entertainment Inc. (collectively, "Defendant Movie Studios"), BrandsMart USA of Florida, Inc., Best Buy Co., Inc., and Target Corporation, (collectively "Defendant Retailers," and with Defendant Movie Studios, "Defendants"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

1

## NATURE OF ACTION

1.      Since the rise of VHS and BetaMax video tapes, Americans have been purchasing Hollywood movies to view in their homes by the millions.  More recently, Hollywood studios have made digital copies of films ("Digital Copies") available to consumers.  Unlike predecessor technologies like video cassettes and DVD and Blu-ray discs, Digital Copies are a digital form of the movie which can be stored and viewed on personal media devices such as home computers, smart phones or other digital media viewing devices.

2.      As part of their campaign to market this technology to consumers, since 2008 Defendants Movie Studios have bundled Digital Copies with DVD and Blu-ray hard copy versions of the same film (hereafter called "Movie Packages") and through Defendant Retailers sell those Movie Packages to consumers at retail stores, charging a premium over the price of the DVD or Blu-ray disc alone.

3.      In order to limit the ability to distribute and share Digital Copies, however, Defendant Movie Studios place an expiration date on the Digital Copies (usually one year from the date of release).  The expiration date is determined by Defendant Movie Studios without regard to the date a consumer purchases the Movie Package.

4.      Defendant Movie Studios do not disclose in a conspicuous manner on the outside packaging of the Movie Packages, the expiration date of the Digital Copies or even the fact that the Digital Copies will expire.  As a result, consumers are misled into purchasing expired products or deprived of notice that the product must be activated within a certain amount of time to prevent forfeiture.

5.      Defendant Movie Studios use two methods to conceal the expiration information from consumers.  Either they provide no disclosure about the expiration date at all on the outside

2

packaging of the product, or they bury the expiration information in extremely small and inconspicuous fine print that cannot be read by the naked eye.  In either event, Defendant Movie Studios leave consumers unaware that their Digital Copies may be expiring or have already expired.  Defendant Movie Studios conduct is therefore, false and misleading.

6.      Since 2008, Defendant Retailers have used their advertising and marketing to promote Digital Copies as a key benefit of the Movie Packages that they sell.  Defendant Retailers are well aware of Defendant Movie Studios' false and misleading practices regarding the expiration of Digital Copies, based on their specialized knowledge of the industry and customer complaints about these practices.  Nevertheless, Defendant Retailers continue stocking their shelves with Movie Packages that fail to disclose or conceal the expiration date of the Digital Copies.  Defendant Retailers also sell Movie Packages *after* the Digital Copy has expired. This conduct is unfair and deceptive.

7.      As a result of Defendants' actions, Plaintiffs and other consumers have been mislead and were forced to forfeit the value of the Digital Copies that they purchased.

8.      Plaintiffs bring this action individually and as a class action on behalf of all persons in the United States who have purchased Movie Packages manufactured or sold by Defendants in which the Digital Copies were not activated (the "Class"), for violation of the Magnuson-Moss Act, 15 U.S.C. §2301, *et seq.*, breach of express warranty, and for unjust enrichments.

9.      Plaintiffs also bring claims against Defendant Movie Studios for violations of that state's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, et seq., Legal Act and Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, et seq. and False Advertising Law, Cal. Bus. & Prof. Code § 17500, et seq.

10.    Plaintiffs also bring claims under Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq.*, on behalf of a Subclass of Florida consumers who have purchased Movie Packages manufactured or sold by Defendants in which the Digital Copies were not activated (the "Florida Subclass").

11.    Plaintiffs also bring claims for breach of implied warranty of merchantability and for breach of implied warranty of fitness for a particular purpose on behalf of a subclass of consumers who purchased Movie Packages manufactured or sold by Defendants in which the Digital Copies had expired prior to the date of purchase.

## PARTIES

12.    Plaintiff Pauline Merl ("Ms. Merl") is a citizen of Florida who resides in Miami, Florida.

13.    Plaintiff Scott J. Merl ("Mr. Merl") is a citizen of Florida who resides in Miami, Florida.

14.    Plaintiff Richard J. Overton ("Overton") is a citizen of Florida who resides in Cutler Bay, Florida.

15.    Defendant Warner Bros. Entertainment, Inc. ("Warner Bros.") is, and at all times relevant was, a corporation organized under the laws of the state of Delaware with its principal place of business in Burbank, California.  Warner Bros. is in the business of producing films and since 2008 has been selling Movie Packages of those films.

16.    Defendant New Line Cinema, LLC ("New Line") is, and at all times relevant was, a limited liability company organized under the laws of the state of Delaware with its principal place of business in Burbank, California.  New Line is in the business of producing films and

4

since 2008 has been selling Movie Packages of those films.  New Line is a unit of Defendant Warner Bros.

17.     Defendant Sony Pictures Digital Entertainment Inc. ("Sony") is, and at all times relevant was, a corporation organized under the laws of the state of Delaware with its principal place of business in Culver City, California.  Defendant Sony is in the business of producing films and 2008 has been selling Movie Packages of those films.

18.     Defendant Universal Studios Home Entertainment LLC ("Universal Studios") is, and at all relevant times mentioned herein was, a limited liability company organized and existing under the laws of the state of Delaware with its principal places of business in, Universal City, California.

19.     Defendant Universal City Studios LLC ("Universal City") is, and at all relevant times mentioned herein was, a limited liability company organized and existing under the laws of the state of Delaware with a principal place of business in Universal City California.  Upon information and belief, Defendants Universal City and Universal Studios (collectively "Universal"), are in the business of producing films and since 2008 have been selling Movie Packages of those films.

20.     Defendant BrandsMart USA of Florida, Inc. ("BrandsMart") is, and at all times relevant was a corporation organized under the laws of the state of Florida with its principal place of business in Hollywood, Florida.  BrandsMart operates an online store and numerous retail stores in Florida and Georgia.  BrandsMart has been selling Movie Packages in its stores since 2008.

21.     Defendant Best Buy Co., Inc. ("Best Buy") is, and at all times relevant hereto was, a corporation organized under the laws of the state of Minnesota with its principal place of

business in Richfield, Minnesota.  Best Buy does business in Florida and throughout the United States.  Best Buy has sold Movie Packages in its online and retail stores since 2008.

22.     Defendant Target Corporation ("Target") is, and at all times relevant hereto was, a corporation organized under the laws of the state of Minnesota with its principal place of business in Minneapolis, Minnesota.  Target does business in Florida and throughout the United States.  Target has sold Movie Packages in its online and retail stores since 2008.

## JURISDICTION AND VENUE

23.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

24.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, and Plaintiffs, as well as most members of the proposed class, are citizens of states different from the states of at least one of the Defendants.

25.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions and acts giving rise to the claims herein occurred in this District.  Defendant BrandsMart is a resident of this district.  Plaintiffs are also residents of this district and purchased several Movie Packages from Defendants in this District. Moreover, Defendants distributed, advertised and sold Movie Packages, which are the subject of the present complaint, in this District.

## FACTS COMMON TO ALL CAUSES OF ACTION

26.     Blu-ray or DVD Movie Packages include a Digital Copy of the same movie or an online redemption code for such a Digital Copy that can be downloaded from the internet.  A

Digital Copy can be transferred to a personal computer, iPod, iPad, Android device or other video-enabled mobile device.

27.     Movie Packages are sold at a premium to the price of DVD and Blu-ray discs alone.  Defendants sell Movie Packages for $5.00 to $10.00 more than a movie disc that does not contain a Digital Copy.

28.      Defendants market Movie Packages as the best of both worlds: the high definition picture quality of a disc and the portability of a Digital Copy.

29.     For example, Defendant Universal's website claims that:  "Digital Copy extends the enjoyment of your DVD or Blu-ray™ purchase. Your disc provides you with the highest quality home entertainment experience available today and your Digital Copy gives you the flexibility to watch your movie ***anytime***, anywhere."[1] (emphasis added)

30.     Similarly Defendant Sony describes its Digital Copy process as "Simple. Easy. Portable" and promises consumers that "[w]ith Digital Copy, you can enjoy a portable version of the film and/or archive the movie onto your PC or PSP quickly and easily."[2]

31.     Defendant Warner Bros. describes its Digital Copies as "Easy. Fast Portable Entertainment on the Go!" and describes the process as simply entering the redemption code included on an insert inside the DVD and Blu-ray packaging to its online site, then transferring the Digital Copy to a personal computer and watching the Digital Copy on the computer.[3] Defendant New Line's Digital Copy redemption is serviced through its parent, Defendant Warner Bros.

32.     Defendants bury in fine print on the Movie Package's box, or within the Movie Package box with an insert, the Digital Copy expiration information.

---

[1] http://www.universalhidef.com/digitalcopy/whatisdigitalcopy/ (last accessed February 14, 2012).
[2] http://www.sonypictures.com/homevideo/digitalcopy/ (last accessed February 28, 2012)
[3] http://www.wbdigitalcopy.com/home/ (last accessed February 28, 2012)

33.     Defendants represented that the Movie Packages sold to Plaintiffs came with a Digital Copy of the movie, but do not conspicuously disclose the Digital Copy would expire or the date upon which it would expire.

34.     As a result, Plaintiffs and like consumers are subject to unwitting forfeiture of their Digital Copies.  In many instances, by the time a consumer purchases the Movie Package, the Digital Copy has already expired.

35.     Defendant Retailers sell and advertise the Movie Packages, when in fact most of those Movie Packages have expired Digital Copies.

36.     Adding insult to injury, Defendant Retailers have return policies that exclude consumers from receiving their money back after they finally find out that their Digital Copy was inaccessible due to expiration.

37.     For example, Best Buy's return policy notes: "Opened computer software, movies, music and video games can be exchanged for the identical item but cannot be returned for a refund."  This exchange policy still would deprive consumers of access to a Digital Copy as an identical Movie Package would have an expired Digital Copy as well.

38.     Defendant Target's exchange policy further eliminates redress for consumers that purchased Movie Packages with expired Digital Copies as the company does not accept returns or exchanges of opened items.

39.     These practices by Defendant Movie Studios and Retailers are misleading and deceptive.

**FACTUAL ALLEGATIONS CONCERNING PLAINTIFFS**

40.     Plaintiff Pauline Merl purchased Defendant Universal's Movie Package of *Get Him to the Greek* including a Blu-ray disc and a Digital Copy from one of Defendant Target's

retail stores in Miami, Florida for her son Mr. Merl.  She paid a premium price for the Digital Copy.  Unbeknownst to Ms. Merl at the time of her purchase, the Digital Copy for this product expired on September 30, 2011.  When her son, plaintiff Mr. Merl, attempted to download the Digital Copy onto his computer in November 2011, the Digital Copy was not available.

41.     As of February 16, 2012, Defendant Universal's Movie Package of *Get Him to the Greek* including a Blu-ray disc and an expired Digital Copy of the film was still being sold on Defendant Target's website and in Target stores.[4]

42.     Plaintiffs Mr. and Ms. Merl also purchased and paid a premium price for Defendant Warner Bros.' DVD Movie Package of *The Hangover* from one of Defendant Target's retail stores in Miami, Florida.  Unbeknownst to Ms. Merl at the time of her purchase, the Digital Copy for this product expired on May 14, 2010, prior to her accessing the Digital Copy that she purchased.

43.     Plaintiff Pauline Merl also purchased and paid a premium price for Defendant New Line Cinema's Movie Package of *Sex and the City the Movie* from one of Defendant Target's retail stores in Miami, Florida.  Unbeknownst to Ms. Merl at the time of her purchase, the Digital Copy for this product expired on March 23, 2009, prior to her accessing the Digital Copy that she purchased.

44.     Plaintiff Overton purchased and paid a premium price for Defendant Warner Bros' Blu Ray Movie Package of *The Hangover* from one of BrandsMart's retail stores in Miami, Florida.  Unbeknownst to Plaintiff Overton at the time of his purchase, the Digital Copy for this product expired on December 15, 2010 prior to his accessing the Digital Copy.  Plaintiff

---

[4] A copy of this webpage, located at http://www.target.com/s?searchTerm=get+him+to+the+greek&category=0%7CAll%7Cmatchallany%7Call+categories (last accessed February 16, 2012) is attached to the Complaint as Exhibit A.

Overton attempted to download the Digital Copy of this film that he paid for, but he was unable to do so, because the access code had expired.

45.    Plaintiff Overton purchased and paid a premium price for Defendant Universal's Movie Package of *Wanted* from one of Defendant Best Buy's retail stores in Miami, Florida. Unbeknownst to Plaintiff Overton at the time of his purchase, the Digital Copy for this product expired on December 31, 2009 prior to his accessing the Digital Copy.  Plaintiff Overton attempted to download the Digital Copy of this film that he paid for, but he was unable to do so, because the access code had expired.

46.    Plaintiff Overton purchased and paid a premium price for Defendant Sony's Movie Package of *District 9* from one of Defendant Best Buy's retail stores in Miami, Florida. Unbeknownst to Plaintiff Overton at the time of his purchase, the Digital Copy for this product expired on December 29, 2010 prior to his accessing the Digital Copy.  Plaintiff Overton attempted to download the Digital Copy of this film that he paid for, but he was unable to do so, because the access code had expired.

47.    Because Plaintiffs were not aware that the Digital Copies that they paid a premium price to obtain expired due to Defendants deceptive and misleading packaging, they were unable to download this content for future use.

48.    All conditions precedent have been performed with regard to this action.

<u>**CLASS REPRESENTATION ALLEGATIONS**</u>

49.    Plaintiffs bring this class action pursuant to Fed. R. Civ. P. 23 (a), (b)(1), (b)(2), and (b)(3) on behalf of all persons in the United States who purchased Movie Packages manufactured or sold by Defendants in which the Digital Copies were not activated (the

10

"Class").  All members of the class were harmed because they are subject to unwitting forfeiture of their Digital Copies.

50.     Plaintiffs also seek to represent a subclass defined as all Class members within Florida who purchased Movie Packages manufactured or sold by Defendants in which the Digital Copies were not activated (hereafter, the "Florida Subclass").

51.     Plaintiffs also seek to represent a subclass defined as all Class members who purchased Movie Packages manufactured or sold by Defendants in which the Digital Copies were expired prior to the date of purchase (hereafter, the "Expired Digital Copy Purchaser Subclass").

52.     Members of the Class and Subclasses are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and Subclasses number in the hundreds of thousands.  The precise number of Class members and their identities are unknown to Plaintiffs at this time but will be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third party retailers and vendors.

53.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to:

(a)     whether Defendant Movie Studios and Defendant Retailers violated the Magnuson-Moss Act, 15 U.S.C. § 201, *et seq.*,;

(b)     whether Defendant Movie Studios and Defendant Retailers breached an express warranty made to Plaintiffs and the Class;

(c)     whether Defendant Movie Studios and Defendant Retailers were unjustly enriched by their misconduct;

(d)     whether Defendant Movie Studios and Defendant Retailers advertise, promote or market Movie Packages in a way that is false or misleading;

(e)     whether Defendants' conduct was false, misleading or reasonably likely to deceive;

(f)     whether Movie Packages fail to conform to the representations, which were published, disseminated and advertised to Plaintiffs and the Class;

(g)     whether Class members have been injured by Defendants' conduct;

(h)     whether Class members suffered an ascertainable loss as a result of the Movie Studio's and Retailer's misrepresentations;

(i)     whether Class and Subclass members are entitled to damages, restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief; and

(j)     whether Defendants' conduct violated provisions of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

54.     Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct.  Plaintiffs have no interest antagonistic to the interests of the other members of the Class.  Plaintiffs and all members of the Class have sustained economic injury arising out of Defendants' violations of common and statutory law as alleged herein.

55.     Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seeks to represent, they have retained counsel competent and experienced in prosecuting class actions, and they intend to prosecute this

action vigorously.  The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

56.     The Class and Subclasses should be certified pursuant to Fed. R. Civ. P. 23(b)(1) because prosecuting separate actions by individual class members would create a risk of inconsistent adjudications with respect to individual class members that would establish incompatible standards of conduct for Defendants.

57.     The Class and Subclasses should also be certified pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted on grounds generally applicable to the class members by making deceptive and misleading claims regarding the Movie Packages.  Final injunctive and declaratory relief reversing such charges and prohibiting any further such charges is appropriate with respect to the Class as a whole and Florida Subclasses as a whole.

58.     The Class and Subclasses should also be certified pursuant to Fed. R. Civ. P. 23(b)(3) because common questions of law and fact predominate over any questions affecting only individual members, as set forth above, and because the class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and Class members.  Each individual Class and Subclass member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class

treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

**COUNT I**
**Violation of Magnuson-Moss Act**
**(15 U.S.C. §2301, *et seq.*)**
**Against All Defendants**

59.     Plaintiffs members of the Class and Subclasses reallege and incorporate by reference each allegation set forth above in paragraph 1 through 58 and further allege as follows.

60.     Plaintiffs bring this claim individually and on behalf of the members of the Class and Subclasses against Defendants.

61.     Movie Packages are consumer products as defined in 15.U.S.C. §2301(1) which cost more than $5.00.

62.     Plaintiffs and Class and Subclass members are consumers as defined in 15 U.S.C. §2301(3).

63.     Defendants are suppliers and warrantors as defined in 15 U.S.C. §2301(4) and (5).

64.     In connection with the sale of Movie Packages, Defendants issued written warranties as defined in 15 U.S.C. §2301(6), which warranted that the Movie Packages included accessible Digital copies of the movie titles.

65.     By reason of Defendants' breach of the express warranties stating that Movie Packages included accessible Digital Copies with purchase when in fact the Digital Copy codes expire or would expire in the near future, Defendants violated the statutory rights due to Plaintiffs and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §2301 *et seq.*, thereby damaging Plaintiffs and Class members.

14

**COUNT II**
**Breach of Express Warranty**
**Against All Defendants**

66.     Plaintiffs and Class members reallege and incorporate by reference each allegation set forth above in paragraph 1 through 58 and further allege as follows.

67.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclasses against all Defendants.

68.     Defendant Movie Studios, as the designers, manufacturers, marketers, or distributors expressly warranted that Movie Packages are sold with accessible Digital Copies of the movie titles.

69.     Defendant Retailers as the distributor or seller expressly warranted that Movie Packages were sold with accessible Digital Copies of the movie titles.

70.     In fact, Defendants sold Movie Packages with access codes for Digital Copies that expired or inconspicuously noted would expire in the near future.

71.     Defendants breached the express warranties with Plaintiffs and the Class by not providing the product as promised.

72.     Plaintiffs and the Class were injured as a direct and proximate result of Defendants' breach because: (a) they would not have purchased the Movie Packages with Digital Copies had they known the access codes expired or would expire in the near future; (b) they paid a premium price to purchase a Movie Package with a Digital Copy; and (c) the Movie Packages were not sold with accessible Digital Copies as promised because the access code either expired or would expire in the near future.

**COUNT III**
**Unjust Enrichment**
**Against All Defendants**

73.     Plaintiffs and Class members reallege and incorporate by reference each allegation set forth above in paragraph 1 through 58 and further allege as follows.

74.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclasses against all Defendants.

75.     Plaintiffs and Class members conferred a benefit on Defendants by purchasing Movie Packages with Digital Copies.

76.     Defendants have been unjustly enriched in retaining the revenues derived from Class members' purchases of Movie Packages with Digital Copies that expired or would expire in the near future, which retention under these circumstances is unjust and inequitable, because Defendants through their misleading and deceptive practices of selling Movie Packages with Digital Copies that had expired or were soon to expire, which caused injuries to Plaintiffs and Class members because: (a) they would not have purchased the Movie Packages with Digital copies had they known the access codes expired or would expire in the near future; and (b) they paid a premium price to purchase a Movie Package with a Digital Copy due to the misleading and deceptive packaging used by Defendants.

77.     Because of Defendants' retention of the non-gratuitous benefit conferred on it by Plaintiffs and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the Class members for its unjust enrichment, as ordered by the Court.

**COUNT IV**
**Violation of the Consumers Legal Remedies Act ("CLRA")**
**(Cal. Civ. Code §§ 1750, *et. seq.*)**
**Against Defendant Movie Studios**
**Injunctive Relief and Restitution Only**

78.    Plaintiffs and Class members reallege and incorporate by reference each allegation set forth above in paragraph 1 through 58 and further allege as follows.

79.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclasses against the Defendant Movie Studios.

80.    Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  Defendant Movie Studios violated this provision by representing their Movie Packages included Digital Copies, when in fact the Digital Copies were expiring or had expired.

81.    Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Defendants violated this provision by representing their Movie Packages included Digital Copies playable on various portable media devices when in fact the Digital Copies were expiring or had expired.

82.    Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." Defendants violated this provision by representing that their Movie Packages included Digital Copies, when in fact the Digital Copies were expiring or had expired.

83.    Plaintiffs and the members of the Class and Subclass suffered injuries caused by the Defendants Movie Studios' misleading representations because: (a) they were induced to

purchase a product they would not have otherwise purchased; (b) they paid a price premium based on the representation that the Movie Packages included Digital Copies.

84.     On February 28, 2012, prior to the filing of this Complaint, a CLRA notice letter was served on Defendants which complies in all respects with California Civil Code §1782(a). Plaintiffs sent the letter via certified mail, return receipt request, advising the Defendant Movie Studios that they were in violation of §1770. The Defendant Movie Studios were further advised that in the event the relief requested has not been provided within thirty (30) days, Plaintiffs would amend their Complaint to include a claim for damages under this statute.  Wherefore, Plaintiffs seek restitution, and injunctive relief for this violation of the CLRA.

85.     Wherefore, Plaintiffs seek restitution, and injunctive relief for this violation of the CLRA.

**COUNT V**
**Violation of the Unfair Competition Law**
**(Cal. Bus. & Prof. Code § 17200, et seq.)**
**Against Defendant Movie Studios**
**Injunctive Relief and Restitution Only**

86.     Plaintiffs and Class members reallege and incorporate by reference each allegation set forth above in paragraph 1 through 58 and further allege as follows.

87.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclasses against the Defendant Movie Studios.

88.     Defendant Movie Studios are subject to the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.* The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

89.     Throughout the Class Period, Defendant Movie Studios committed acts of unfair competition, as defined by Cal. Bus. & Prof. Code § 17200, by using false and misleading

statements to promote the sale of Movie Packages without conspicuously disclosing prior to consummation of the transaction that the Digital Copies had expired or would expire.

90.   Defendants violated the "fraudulent" prong of the UCL by representing their Movie Packages included Digital Copies when in fact those Digital Copies were expiring or had already expired.  This conduct is unfair in that the harm to Plaintiffs and the Class arising from their conduct outweighs the utility, if any, of those practices.

91.   Defendants' conduct, described herein, violated the "fraudulent" prong of the UCL by representing their Movie Packages included Digital Copies when in fact those Digital Copies were expiring or had already expired.

92.   Plaintiffs and the Class have suffered injury and actual out of pocket losses as a result of Defendants' UCL violations because: (a) Plaintiffs and the Class were induced to purchase a product they would not have otherwise purchased had they known the truth about the product; and (b) Plaintiffs and the Class were induced to pay substantially more for their Movie Packages than they would have if purchased a DVD or Blu-ray movie that did not include a Digital Copy.

93.   Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs and the Class are therefore entitled to: (a) an Order requiring the Defendant Movie Studios to cease the acts of unfair competition alleged herein; (b) an Order requiring corrective disclosures; (c) full restitution of all monies paid to the Defendant Movie Studios as a result of their deceptive practices; (d) interest at the highest rate allowable by law; and (e) the payment of Plaintiff's attorneys' fees and costs pursuant to, *inter alia*, Cal. Civ. Proc. Code §1021.5.

**COUNT VI**
**False Advertising Law**
**Cal. Bus. & Prof. Code § 17500, et seq.**
**Against Defendant Movie Studios**

94.     Plaintiffs and Class members reallege and incorporate by reference each allegation set forth above in paragraph 1 through 58 and further allege as follows.

95.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Class and Subclasses against the Defendant Movie Studios.

96.     California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

97.     Throughout the Class Period, Defendant Movie Studios committed acts of false advertising, as defined by Cal. Bus. & Prof. Code §17500, by promoting its Movie Packages as containing Digital Copies without disclosing in a reasonable manner that those Digital Copies were expiring or had already expired.

98.     The Defendant Movie Studios knew or should have known, through the exercise of reasonable care that the statements were untrue and misleading.

99.     Defendant movie Studios' actions in violation of Cal. Bus. & Prof. Code § 17500 were false and misleading such that the general public is and was likely to be deceived.

100.    Plaintiffs, members of the Class and Subclasses lost money or property as a result of Defendants' FAL violations because they were induced to purchase and pay a premium for a digital copy which they never received.

101.    Plaintiffs bring this action pursuant to Cal. Bus. & Prof. Code § 17535 for injunctive relief to enjoin the practices described herein and to require Defendants movie Studios to issue corrective disclosures to consumers.

**COUNT VII**
**Violation of the Florida Deceptive and Unfair Trade Practices Act,**
**Fla. Stat. §501.201 *et seq.***
**Against All Defendants**

102.    Plaintiffs and Class members reallege and incorporate by reference each allegation set forth above in paragraph 1 through 58 and further allege as follows.

103.    Plaintiffs bring this claim individually and on behalf of the members of the Florida Subclass against Defendants.

104.    This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201 *et seq.* (the "Act").  The express purpose of the Act is to "protect the consuming public…from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. §501.202(2).

105.    Plaintiffs and Florida Subclass members are "consumers" within the meaning of Fla. Stat. §501.203(7).

106.    Defendants were engaged in "trade or commerce" as defined by Fla. Stat. §501.203(8).

107.    The sale of Movie Packages constituted "consumer transactions" within the scope of the Fla. Stat. §§ 501.201 to 501.213.

108.    Fla. Stat. §501.204(1) declares unlawful "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

109.    Defendants' unfair and deceptive practices are likely to mislead- and have misled- the Plaintiffs acting reasonably under the circumstances, and violates Fla. Stat. §501.204.

110.    Defendants have violated the Act by engaging in the unfair and deceptive practices as described herein which offend public policies and are immoral, unethical, unscrupulous, and substantially injurious to consumers.

111.    Plaintiffs and the Florida Subclass have been aggrieved by Defendants' unfair and deceptive practices in that they paid for Movie Packages to include a Digital Copy, a product they would not have purchased had they known the true facts -that those Digital Copies would expire or had already expired at the time of purchase.

112.    The damages suffered by Plaintiffs and the Florida Subclass were directly and proximately caused by the deceptive, misleading and unfair practices of Defendants, as more fully described herein.

113.    Pursuant to Fla. Stat. §501.211(1), Plaintiffs and the Florida Subclass seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

114.    Additionally, pursuant to Fla. Stat. §§ 501.211(2) and 501.2105, Plaintiffs and the Florida Subclass make claims for damages and attorneys' fees and costs.

22

**COUNT VII**
**Breach Of Implied Warranty Of Merchantability**
**Against All Defendants**

115.    Plaintiffs individually and on behalf of the members of the Expired Digital Copy

Purchasers Subclass reallege and incorporate by reference each allegation set forth above in

paragraph 1 through 58 and further allege as follows.

116.    Plaintiffs bring this claim on behalf of a nationwide Expired Digital Copy

Purchaser Subclass.

117.    Defendants are in the business of selling these Movie Packages and hold

themselves out as having special knowledge or skill regarding these products.

118.    The Movie Packages were purchased by Plaintiffs and the members of the

Expired Digital Copy Purchaser Subclass with expired Digital Copies.  The Movie Packages

were not altered by Plaintiffs and Expired Digital Copy Purchaser Subclass members.

119.    The Movie packages with expired Digital Copies are and were not of the same

quality as those generally acceptable in the trade.  The Movie Packages were not fit for the

ordinary purpose for which they were to be used, because the Digital Copies have expired and

cannot be used at all.

120.    Plaintiffs notified Defendants of the defects prior to filing suit.

121.    Defendants breached the implied warranty of merchantability because the Movie

Packages could not pass without objection in the trade under the contract description, the goods

were not of the quality within the description, and the goods were unfit for their intended and

ordinary purpose in that they did not possess the Digital Copy.  Furthermore, the Movie

Packages did not conform to the promises or affirmations of fact made on the Movie Package's

packaging.  As a result, Plaintiffs and the Expired Digital Copy Purchaser Subclass members did

not receive the goods as impliedly warranted by Defendants to be merchantable.

23

122.    As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiffs and the Expired Digital Copy Purchaser Subclass members have been injured and harmed because: (a) they would not have purchased the Movie Packages on the same terms if the true facts regarding the expired Digital Copies had been known; (b) they paid a price premium for the Movie Packages with expired Digital Copies; and (c) the Movie Packages with expired Digital Copies did not have the quality, functionality or value as promised.

**COUNT VII**
**Breach Of Implied Warranty Of Fitness For A Particular Purpose**
**Against All Defendants**

123.    Plaintiffs individually and on behalf of the members of the Expired Digital Copy Purchasers Subclass reallege and incorporate by reference each allegation set forth above in paragraph 1 through 58 and further allege as follows.

124.    Plaintiffs bring this claim on behalf of a nationwide Expired Digital Copy Purchaser Subclass.

125.    Defendants marketed, distributed, and/or sold the Movie Packages with expired Digital Copies with implied warranties that these Movie Packages were fit for their intended purposes in that they would include an accessible Digital Copy.

126.    At the time that the Movie Packages were sold, Defendants knew or had reason to know that Plaintiffs were relying on Defendants' skill and judgment to select or furnish a product that was suitable for the purpose of including access to Digital Copies.

127.    In reliance upon Defendants' implied warranties of fitness for the purpose of viewing Digital Copies, Plaintiffs and the Expired Digital Copy Purchaser Subclass members purchased the Movie Packages because they believed that the Movie Packages included a functional and accessible Digital Copy.

128.    The Movie Packages were not altered by Plaintiffs and Expired Digital Copy Purchaser Subclass members.  The Movie Packages were purchased by Plaintiffs and Expired Digital Copy Purchaser Subclass with expired Digital Copies.

129.    As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiffs and the Expired Digital Copy Purchaser Subclass members have been injured and harmed because: (a) they would not have purchased the Movie Packages on the same terms if the true facts regarding the expired Digital Copies had been known; (b) they paid a price premium for the Movie Packages with expired Digital Copies; and (c) the Movie Packages did not have the quality, functionality or value as promised because the Digital Copies had expired.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and on behalf of the members of the proposed Class, the Florida Subclass, and the Expired Digital Copy Purchaser Subclass, respectfully request that this Court enter judgment as follows:

A.    Declaring that this action is properly maintainable as a class action, certifying the proposed Class, the Expired Digital Copy Purchaser Subclass and the  Florida Subclass, and appointing plaintiffs and their undersigned counsel of record to represent the proposed Class and Subclasses;

B.    Declaring that Defendants' conduct violates the statutes referenced herein;

C.    Finding in favor of Plaintiffs, the Class and the Subclasses on all counts asserted herein;

D.    Awarding injunctive relief as pleaded or as the Court may deem proper;

E.    Awarding damages in amounts to be determined by the Court and/or jury;

F.    Awarding pre- and post-judgment interest;

G.      Awarding attorneys' fees, expenses, and costs; and

H.      Providing such further relief as this Court deems necessary, just or proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury of all issues so triable.

Dated: March 2, 2012                    Respectfully submitted,

                                        **THORNTON, DAVIS & FEIN, P.A**

                                        By:   s/Barry L. Davis
                                                Barry L. Davis

                                        Barry L. Davis  (State Bar No. 294977)
                                        Nanci R. Schanerman  (State Bar No. 93299, *pro
                                        hac vice to be filed pending admission*)
                                        80 SW Eighth Street, 29th Floor
                                        Miami, Florida 33130
                                        Telephone: (305) 446-2646
                                        Email:  davis@tdflaw.com
                                                    Schanerman@tdflaw.com

                                        Christopher Marlborough (State Bar No. 894621)
                                        FARUQI & FARUQI, LLP
                                        369 Lexington Avenue, 10th Floor
                                        New York, New York 10063
                                        Telephone: (212) 983-9330
                                        Email:  cmarlborough@faruqilaw.com

                                        Scott A. Bursor (State Bar No. 68362)
                                        BURSOR & FISHER, P.A.
                                        3595 Sheridan Street, Suite 206
                                        Hollywood, Florida 33021
                                        Telephone: (954) 239-0007
                                        Email:  scott@bursor.com